UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MISC. NO. 07-21830

IN THE MATTER OF THE EXTRADITION
OF MANUEL ANTONIO NORIEGA
_____/

**MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION**

On July 17, 2007, the United States filed an initial complaint for the extradition of Manuel Antonio Noriega, at the request of the Government of the Republic of France, pursuant to the Extradition Treaty between the United States and the Republic of France. In this matter, the United States acts on behalf of the French government.

The Republic of France has submitted a formal request for Noriega's arrest, extradition and surrender, supported by appropriate documents, to the United States Department of State. By statute, this Court must thereafter hold a hearing to consider the evidence of criminality presented by the Republic of France and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If the Court finds the evidence sufficient, it certifies the extradition to the Secretary of State, who decides whether to surrender the fugitive.[1]

As summarized in the complaint, Noriega has been convicted in France on charges of engaging in financial transactions with the proceeds of illegal drug trafficking, an offense that corresponds to money laundering under United States law (*see* 18 U.S.C. §§ 1956 and 1957). Noriega is presently serving a sentence in the United States following his conviction in 1992 on drug

---

[1] After the court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *Id.*

trafficking charges in the Southern District of Florida. According to the French judgment, Noriega first deposited the proceeds from his extensive involvement in cocaine trafficking into bank accounts in Panama, and then transferred that money to accounts in various European banks. Noriega opened accounts in other names and made numerous transfers of funds in order to conceal the true owner of the money. French investigation identified a number of transactions involving accounts in France attributable to Noriega and made between December 28, 1988 and December 22, 1989. The transactions involve a total of approximately 15 million French francs. Noriega was convicted *in absentia* in France on July 1, 1999 and sentenced to ten years' imprisonment and fined 75 million French francs.

Because the law regulating extradition differs from ordinary criminal or civil proceedings, so much as to be classed *sui generis,* the government offers this memorandum as a guide to the nature of the hearing and a description of its distinctive features.

## I. THE NATURE OF THE HEARING

### A. Purpose of the Extradition Hearing

The purpose of the hearing required by 18 U.S.C. § 3184 is to determine whether a person arrested pursuant to a complaint in the United States at the request of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. If the court decides that the elements necessary for extradition are present, it incorporates these determinations in factual findings and conclusions of law styled as a certification of the extradition case, which is forwarded to the Department of State for disposition by the Secretary of State. The decision of whether to surrender the fugitive to the requesting country rests with the Executive Branch via the Secretary of State.

**B**.    **Elements Necessary for Extradition Certification**

An extradition certification is in order where: (1) the judicial officer is authorized to conduct extradition proceedings; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by treaties; and (5) there is competent legal evidence to support a finding of probable cause as to each charge for which extradition is sought. *See Fernandez v. Phillips,* 268 U.S. 311, 312 (1925), *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Hill v. United States*, 737 F.2d 950, 951 n.1 (11th Cir. 1984).

    1. Authority of the Court Over the Proceedings

The authority of a United States magistrate judge to conduct an extradition hearing is virtually indisputable under 18 U.S.C. § 3184, which provides that a judicial officer can be "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." *Austin v. Healey*, 5 F.3d 598, 601-602 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority), *cert. denied*, 510 U.S. 1165 (1994); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d 547, 553-555 (5th Cir. 1962).

    2. Jurisdiction Over the Fugitive

It is also well settled that the court has jurisdiction over a fugitive found within its jurisdictional boundaries. *See* 18 U.S.C. § 3184 (the magistrate judge "may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the

3

apprehension of the person so charged"); *see also Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181 (1902); *In re Pazienza*, 619 F. Supp. 611 (S.D.N.Y. 1985).

    3. <u>Treaty in Full Force and Effect</u>

The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances in which a treaty is in force between the requesting state and the requested state, and several cases have so held. *See, e.g., In re Chan Kam-Shu*, 477 F.2d 333 (5th Cir.), *cert. denied*, 414 U.S. 847 (1973). As part of its proof, the government has provided a declaration from Kenneth Propp, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and the Republic of France. The Department of State's opinion in this sphere is entitled to deference from the court. *See Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States,* 365 F.3d 980, 985-987 (11th Cir. 2004), *cert. denied,* 541 U.S. 1090 (2004)*; United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F3d 851, 854 (9th Cir. 1996).

    4. <u>Crimes Covered by the Treaty</u>

Extradition treaties create an obligation to surrender fugitives under the circumstances defined in the treaty. Article 1 of the treaty provides for the return of fugitives charged with or convicted of an extraditable offense as further defined under the treaty. The documents submitted by the requesting state establish that the fugitive has been charged and convicted *in absentia* in the Republic of France with the crime of engaging in financial transactions with the proceeds of illegal drug trafficking, in violation of § 415 of the French Customs Code (Law 88-1149 of December 23, 1988, promulgated on December 28, 1988). As noted in the complaint filed with this court, the government of France submitted assurances that Noriega would, upon his surrender to France, have an

opportunity to challenge the *in absentia* conviction and seek a new trial. *See United States v. Fernandez-Morris*, 99 F. Supp.2d 1358, 1366 (S.D. Fla. 1999) ("Probable cause is not established merely by the fact that there has been an *in absentia* conviction.").

The treaty may specify that extradition can be had for particular offenses that are listed in the treaty, for any serious offense that is punishable in both the requesting and requested state (dual criminality), for some combination of those two categories, or for an even broader range of offenses. The court must determine whether the crime for which extradition is requested is among the offenses specified in the treaty as giving rise to an obligation to extradite.

Dual criminality is not required *per se* for extradition; it need be found only if, as here, the treaty so requires. *See Factor v. Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson,* 635 F.2d 1237 (7th Cir. 1980). Article 2 of the treaty here applicable defines acts as extraditable if they are punished under the laws of both the United States and France by a deprivation of liberty for a maximum of at least one year or by a more severe penalty. A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours. *See Kelly v. Griffin*, 241 U.S. 6, 15 (1916). When, as here, a dual criminality analysis is required, the court should examine the facts and decide whether the fugitive's conduct would have been criminal under our law. The Supreme Court noted in *Collins v. Loisel,* 259 U.S. 309 (1922), that dual criminality is not a technical concept involving a comparison of elements of the two countries offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added); *accord Gallo-Chamorro v. United States,* 233 F.3d 1298, 1307 (11th Cir. 2000), *cert. denied,* 516 U.S. 811 (1995); *United States v. Saccoccia*, 58 F.3d 754, 766 (1st

Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996).

In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *See Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-108 (9th Cir. 1981). The court's analysis of the question of dual criminality is subject to the general requirement that it "approach challenges to extradition with a view toward finding the offense within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981). This liberal construction is based in part on the recognition that foreign governments should not be expected to be versed in our criminal laws and procedures. *See Grin v. Shine,* 187 U.S. at 184-185.

Noriega's criminal money laundering activity in France, had it occurred in the United States, would be subject to prosecution under 18 U.S.C. § 1956 and/or § 1957.

5. Probable Cause that the Fugitive has Committed the Offenses

The standard of proof for the sufficiency of the extradition hearing evidence is the familiar requirement under federal law of probable cause to believe that a crime was committed and the person before the court committed it. *See Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006); *Sindona v. Grant,* 619 F.2d 167 (2d Cir. 1980). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *See Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Benson v. McMahon,* 127 U.S. 457, 463 (1888), that:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an

>indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*See also Collins,* 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez,* 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to convict."); *accord, Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir.), *cert. denied,* 546 U.S. 993 (2005); *Barapind v. Enomoto,* 400 F.3d 744, 752 (9th Cir. 2005); *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997), *cert. denied,* 522 U.S. 1089 (1998).

In the case of a prior conviction, this court's review of probable cause is basically limited to reviewing the judgment of conviction. *See United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez,* 311 F.2d at 562; *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872 (1964). However, in the case of an *in absentia* conviction, Article 10 of the treaty requires, and the government of France has provided, evidence which would justify committal of Noriega for trial had the offense been committed in the United States.

As outlined in the complaint and further detailed in the request for extradition, France has provided detailed evidence, drawing on the proof presented in the United States prosecution and evidence developed in France's own investigation and prosecution, of Noriega's money laundering activities in France. The French request shows that testimony at Noriega's trial in this country proved beyond a reasonable doubt that he received millions of dollars in illegal drug trafficking proceeds and deposited them in Panamanian bank accounts. Further French investigation has traced

those funds as they were transferred to banks in France and other European countries. The French have evidence showing how the funds were transferred from account to account, often in the names of others, in order to conceal the source and true ownership of the money.

### C.    Role of the Judicial Officer

Extradition is primarily an executive responsibility with a specially defined role for a judge. An extradition court, as opposed to a judge hearing a habeas corpus petition, does not exercise the broad judicial power of Article III under the Constitution when considering the original request for an extradition arrest warrant. The extradition magistrate, specially authorized by statute and treaty, performs the relatively ministerial task of determining whether to certify an extradition to the Secretary of State. *See Martin v. Warden*, *Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993); *Lo Duca v. United States,* 93 F.3d at 1100, 1110 n.10 (2d Cir. 1996). The assignment of this generically judicial-type function to a judge, while simultaneously not arrogating the whole extradition process to the judiciary, does not violate the separation of powers doctrine. *See Lo Duca,* 93 F.3d at 1103-1111. The executive remains primarily responsible for extradition, while a state or federal judge is assigned the duty of determining probable cause. *See Martin*, 993 F.2d at 828-829.

The court considers the evidence presented on behalf of the requesting state and determines whether the elements defined in the treaty and the case law cited above have been established. If any explanatory evidence or evidence in support of an affirmative defense specified in the treaty is offered, the court rules on it. The court makes written findings of fact and conclusions of law as to each of the elements, including separate findings for each offense as to which extradition is sought. *See Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973) (separate findings). When the court certifies a case to the Secretary of State, the court also commits the fugitive to the custody of the United States

Marshal to await the further determination by the Secretary regarding surrender to the representatives of the requesting state. The court's Certification of the case is provided to the Secretary of State together with a copy of any evidence presented on behalf of the fugitive. 18 U.S.C. § 3184. *See Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir. 2007), *cert. pending*, No. 06-11518 (May 23, 2007).

### D. Extradition Treaties to Be Liberally Interpreted

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. *See Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 293, 301 (1933). In discussing the application of this rule, the District Court for the Southern District of Florida in *McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981), wrote:

> [A] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them.

(citations omitted).

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor,* 290 U.S. at 298. This country does not expect foreign governments to be versed in our criminal laws and procedures. *Grin,* 187 U.S. at 184. Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez,* 268 U.S. at 312.

Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168 (1999);

*Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184-185 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").

## II. DISTINCTIVE FEATURES OF THE LAW OF EXTRADITION

### A. Extradition Hearing Not a Criminal Proceeding

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature. *See, e.g., Martin,* 993 F.2d at 828; *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir.) (extradition is *sui generis*), *cert. denied,* 429 U.S. 833 (1976). An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable cause, not guilt or innocence. *See Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Afanasjev*, 418 F.3d at 1165 n.11. Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial. *See Neely,* 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *accord, Charlton v. Kelly*, 229 U.S. 447, 461 (1931); *Martin*, 993 F.2d at 829. The process due for a determination of guilt under the foreign law is correctly afforded by the foreign court making that determination. *Neely*, 221 U.S. at 123.

Accordingly, the fugitive has no right to discovery, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), *cert. denied*, 546 U.S. 1171 (2006); *Koskotas v. Roche,* 931 F.2d 169, 175 (1st Cir.1991); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); he has no right to cross examination if any witnesses testify at the hearing, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988), *cert. denied*, 490 U.S. 1106 (1989); *Messina,* 728 F.2d at 80; his right to present evidence is severely limited, *Messina,* 728 F.2d at 80; there is no Sixth Amendment right to a speedy

trial, *Yapp,* 26 F.3d at 1565; *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth Amendment guarantee against double jeopardy does not apply to extradition, *Collins,* 262 U.S. at 429; *Matter of Extradition of McMullen*, 989 F.2d 603, 612-613 (2d Cir.), *cert. denied*, 510 U.S. 913 (1993); the exclusionary rule is not applicable, *Romeo v. Roache,* 820 F.2d 540, 545 (1st Cir. 1987); *Simmons v. Braun*, 627 F.2d 635, 636-637 (2d Cir. 1980); and the defendant does not have the right to confront his accusers, *Bingham v. Bradley,* 241 U.S. 511, 517 (1916).

      **B.**      **Inapplicability of Federal Rules of Criminal Procedure and Evidence**

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 54(b)(5) states that "[t]hese rules are not applicable to extradition and rendition of fugitives." The Federal Rules of Evidence are also inapplicable. Rule 1101(d)(3) provides that "[t]he rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition." *See Afanasjev*, 418 F.3d at 1164-1165; *Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976).

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability. *See Collins,* 259 U.S. at 317; *Afanasjev,* 418 F.3d at 1165. Extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *accord, Bingham*, 241 U.S. at 517. Thus, a finding of extraditability may be and often is based entirely on documentary evidence. *See Afanasjev*, 418 F.3d at 1163-1165; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986); *Shapiro,* 478 F.2d at 902.

The admissibility of documents offered at an extradition hearing is governed by 18 U.S.C. § 3190, which provides for admission of documents as long as they are properly authenticated. *See*

*Afanasjev*, 418 F.3d at 1164; *see also Collins*, 259 U.S. at 313. Alternatively, documents may be received in evidence if they are certified in accordance with the terms of the treaty. *See Emami v. United States District Court*, 834 F.2d 1444, 1451 (9th Cir. 1987); *Escobedo v. United States*, 623 F.2d 1098, 1102-1104 (5th Cir. 1980).

### C. Limitations on Fugitive's Evidence

Because of the limited purpose of an extradition proceeding, the importance of the international obligations of the United States under an extradition treaty, and the inherent practical difficulties in international proceedings, a fugitive's right to challenge the evidence introduced against him is very circumscribed. The fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the demanding state, but may introduce evidence explaining the evidence submitted by the requesting state. *See Collins*, 259 U.S. at 315-317; *Charlton,* 229 U.S. at 461; *Ordinola,* 478 F.3d at 608-609; *Hoxha,* 465 F.3d at 561. The district court in *In re Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations. The Supreme Court decisions are *Collins v. Loisel*, 259 U.S. 309, 316, 42 S. Ct. 469, 66 L. Ed. 956 (1922), and *Charlton v. Kelly*, 229 U.S. 447, 461, 33 S. Ct. 945, 57 L. Ed. 1274 (1913). The district court opinion is *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883), in which the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

450 F. Supp 672 at 685. The extent to which the fugitive may offer explanatory proof is largely within the discretion of the committing judicial officer. *See Koskotas*, 931 F.2d at 175; *Hooker v. Klein,* 573 F.2d 1360, 1369 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964) (and cases cited therein). The category of explanatory evidence is not large, and the fact that the purpose of the hearing is to determine the sufficiency of the evidence to sustain the charge, and the fact that the overarching goal of the proceeding is to effectuate the purposes of the treaty, further limit what evidence may be admitted. Evidence that requires the court to make determinations properly within the province of the ultimate trier of fact, particularly when those determinations rest on foreign law, exceed the limits of "explanatory" evidence and are not properly before the court. *See Extradition of Solis*, 402 F. Supp.2d 1128, 1132 (C.D.CA 2005).

### D. Impermissible Defenses

A court should reject defenses against extradition that "savor of technicality," as they are peculiarly inappropriate in dealings with a foreign nation. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal

courts is not a defense to surrender. *See Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1910); *accord Bingham*, 241 U.S. at 517; *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974); *Shapiro,* 478 F.2d at 904.

      1.      No Affirmative Defenses

It is well settled that affirmative defenses are not relevant in extradition hearings and should not be considered. *See Charlton,* 229 U.S. at 462; *Collins*, 259 U.S. at 316-317; *Hooker,* 573 F.2d at 1368. A fugitive may not introduce evidence that (1) conflicts with the evidence submitted on behalf of the demanding state, *Collins,* 259 U.S. at 315-317; (2) establishes an alibi, *Shapiro,* 478 F.2d at 901; (3) sets up an insanity defense, *Charlton,* 229 U.S. at 462; or (4) impeaches the credibility of the demanding country's witnesses, *Bovio v. United States,* 989 F.2d 255, 259 (7th Cir. 1993). He is limited to introducing explanatory evidence. *See* Section II.C above.

      2.      Trial in demanding country on other charges

A fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted, or that surrender is being requested for political offenses, must be rejected as baseless or beyond the responsibility of the court, for the United States Government does not presume that the demanding government will seek a trial in violation of a treaty. *See Bingham,* 241 U.S. at 514. As the district court noted in *Gallina v. Fraser*, 177 F. Supp. 857, 867 (D. Conn. 1959), "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."

      3.      Rule of Non-Inquiry

It is not the role of the court to look behind the extradition request to the motives of the

requesting country. *See Ordinola*, 478 F.3d at 604 ("the motives of the requesting government are irrelevant to our decision" and "must be addressed to the Secretary of State"); *Eain v. Wilkes*, 641 F.2d 504, 513 (7th Cir.) (sole discretion of Secretary of State to determine whether foreign country's request for extradition is a subterfuge), *cert. denied*, 454 U.S. 894 (1981). Likewise, the court should not investigate the fairness of the requesting country's criminal justice system. *See U.S. v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed"); *see also Prasoprat, 421 F.3d at 1016; Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003).

## CONCLUSION

Extradition hearings are often characterized as *sui generis. See, e.g., Martin,* 993 F.2d at 828; *Hooker,* 573 F.2d at 1369. Despite the unusual nature of the proceedings, there is no mystery to the law of extradition; it is regulated by a body of well-settled precedent, much of it originating with the Supreme Court. *See Ahmad v. Wigen,* 910 F.2d 1063, 1065 (2d Cir. 1990). Although other elements must also be present, the paramount issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crimes charged in the requesting country. The latter determination is the kind that courts make in a preliminary hearing under Federal Rule of Criminal Procedure Rule 5.1. The extradition hearing must not be converted into a trial on the merits and the rules ordinarily applicable in such trials are not used. The extraditee's opportunities to oppose the request are limited because his defenses will be aired in the requesting country under its law. The court's findings of fact and conclusions of law should deal with each of

the elements listed above, and with each offense for which extradition is requested.

                    R. ALEXANDER ACOSTA
                    UNITED STATES ATTORNEY

By:   s/ Michael P. Sullivan
      Michael P. Sullivan
      Assistant United States Attorney
      Florida Bar No. 134814
      Miami, Florida 33132-2111
      Tel: (305) 961-9274
      Fax: (305) 536-7213
      Pat.Sullivan@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 26, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                    s/ Michael P. Sullivan

                    Michael P. Sullivan
                    Assistant United States Attorney