UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISC. NO. 07-21830

IN THE MATTER OF THE EXTRADITION OF
GENERAL MANUEL ANTONIO NORIEGA
_____/

**GENERAL MANUEL NORIEGA'S RESPONSE IN
OPPOSITION TO COMPLAINT FOR EXTRADITION**

General Manuel Antonio Noriega contests the authority of this Court to conduct extradition proceedings. As this Court is aware, General Noriega has pending before Judge William Hoeveler a petition for writs of habeas corpus, mandamus, and prohibition. On Monday, August 13, 2007, Judge Hoeveler stated that he would rule on that petition by Friday, August 24, 2007. In the event that Judge Hoeveler rules that the petition filed before him was premature or that any objection to the extradition proceedings must be litigated before this Court, this pleading is intended to preserve those objections.

1. General Manuel Antonio Noriega has been in the custody of the United States since late December 1989. He has been in prison for over 17 years. He is scheduled to be released from the custody of the Bureau of Prison on September 9, 2007.

1

2. Pursuant to Article 85 of the Geneva Convention Relative to the Treatment of Prisoners of War ("Geneva III"), August 12, 1949, 6 U.S.T, 3316, T.I.A.S. No. 3364, 75 U.N.T.S. 135:

> *Prisoners of war prosecuted under the laws of the Detaining Power for acts committed prior to capture shall retain, even if convicted, the benefits of the present Convention.*

3. One of those benefits is the right to be repatriated to the prisoner's country of origin. Pursuant to Article 118:

> *Prisoners of war shall be released and repatriated without delay after the cessasion of hostilities.*

4. The only exception to the mandate for immediate repatriate is where the prisoner is serving a sentence of imprisonment imposed by the detaining power. Pursuant to Article 119:

> *Prisoners of war against whom criminal proceedings for an indictable offense are pending may be detained until the end of such proceedings and, if necessary, until the completion of the punishment. The same shall apply to prisoners of war already convicted for an indictable offense.*

5. In *United States v. Noriega*, 808 F.Supp., 791 (S.D. Fla. 1992) the Honorable William Hoeveler held that General Noriega was a prisoner of war and was entitled to the protections of Geneva III. Id. at 796. Judge Hoeveler further held that prisoners of war could seek to enforce their rights under the Geneva Convention in the domestic

courts of the United States. *Id.* at 794. At the time that Judge Hoeveler made these rulings, no other court had ruled upon the rights of prisoners of war to seek redress before courts of law. In 2006 the Supreme Court of the United States agreed with Judge Hoeveler and held that prisoners of war could seek redress in federal court for violation of the Geneva Convention. *Hamdan v. Rumsfeld*, ___U.S.___,126 S.Ct. 1749, 2793-96 (2006).

6. Of relevance to these proceedings are the government's arguments that:

(a) Articles 119, 12 and 115 Geneva Convention III, grant the United States authority to extradite General Noriega to France for service of his criminal conviction there;

(b) General Noriega cannot raise provisions of the Geneva Convention pursuant to the Military Commissions Act of 2006.

The government is wrong for the reasons discussed below:

**MEMORANDUM OF LAW**

**A. ARTICLE 119 PROVIDES NO AUTHORITY TO EXTRADITE A PRISONER OF WAR TO ANOTHER COUNTRY FOR PROSECUTION OR SERVICE OF A SENTENCE**

Article 119 of Geneva III, provides in part:

> *Prisoners of war against whom criminal proceedings for an indictable offense are pending may be detained until the end of such proceedings, and, if necessary until the completion of the punishment. The same shall apply to prisoners of war already convicted of an indictable offense.*

Geneva Convention Relative to the Treatment of Prisoners of War ("Geneva III"), August 12, 1949, 6 U.S.T, 3316, T.I.A.S. No. 3364, 75 U.N.T.S. 135.

Based upon this provision, the United States was permitted to detain General Noriega in federal custody long after the state of hostilities ended between the United States and Panama. This is because Article 119 is a specific exception to a prisoner's right to be immediately repatriated at the conclusion of hostilities. But this Article has absolutely no application to France. France was not a participant in the invasion of Panama. General Noriega is not a prisoner of war of France. The Convention simply does not apply.

The government's reliance upon Article 12 is equally misplaced. Article 12 states in relevant part:

> *Prisoners of war may only be transferred by the Detaining Power to a Power which is a party to the Convention and after the Detaining Power has satisfied itself of the willingness and ability of such transferee Power to apply the Convention. When prisoners of war are transferred under such circumstances, responsibility for the application of the Convention rests on the Power accepting them while they are in custody.*

As is clear from the plain language of this provision, Article 12 does not constitute a grant of authority to a Detaining Power to transfer a prisoner. It is a limitation upon such authority. It requires that a Detaining Power insure that a prisoner transferred to another Power agree to comply with the Geneva Convention.

The Commentary to Article 12 demonstrates that this provision was intended to apply to transfers between allied Powers during war. The drafters wanted to insure that a soldier captured by a Power that is a party to the Convention but interred by a Power that is not, would continue to receive the protections of the Convention. As noted in the Commentary, this practice had become increasingly common during the Second World War and was expected to continue due to "the establishment of military organizations for collective defense such as the North Atlantic Treaty Organization and the Warsaw Pact, which place the armed forces of several Powers under unified command in case of conflict." 3 International Committee of the Red Cross, *Commentary on the Geneva Conventions,* 131-132 (J. Pictet, ed., 1960).

France was not an ally of the United States during the United States's invasion

of Panama. The proposed extradition of General Noriega is not a transfer of a prisoner of war from one ally's prison camp to another ally's prison camp during time of war. This article simply has no relevance to the instant proceedings.

Similarly tortured is the government's reliance upon Article 115. That article stands for the very opposite of what the government asserts:

> *Prisoners of war detained in connection with a judicial prosecution or conviction and who are designated for repatriation or accommodation in a neutral country, may benefit by such measures before the end of the proceedings or the completion of punishment, if the Detaining Power consents.*

As the Commentary makes crystal clear, Article 115 is a humanitarian provision designed to benefit wounded or sick prisoners entitled to repatriation or accommodation. To fully understand this article, the Court must also look at Article 110. That article provides a narrow class of prisoners, those whose medical condition make them unlikely to take up arms, the right to be repatriated to their home nation or to a neutral power before the end of hostilities. Article 115 encourages the Detaining Power to directly repatriate or accommodate this narrow class or prisoners despite their imprisonment for a criminal conviction. Commentary, p. 513, 536 . It is clearly not authority to subject a prisoner to further punishment.

### B. THE MILITARY COMMISSIONS ACT OF 2006 APPLIES ONLY TO PERSONS DESIGNATED ENEMY COMBATANTS; IT DOES NOT APPLY TO PRISONERS OF WAR

Before Judge Hoeveler, the United States invoked the the Military Commissions Act of 2006, Pub. L. No. 109-366, §5a, Oct. 17, 2006, 120 Stat. 2613, 10 U.S.C. §948a *et seq.* to suggest that there exists a threshold question of whether General Noriega has standing to litigate provisions of the Geneva Convention in Federal Court. As this Court is aware, the Act seeks to revoke the authority of federal courts to consider habeas petitions raised by enemy combatants. It specifically precludes reliance upon the Geneva Convention.

As the name applies, the Military Commission Act was enacted in order to create a mechanism to try enemy combatants housed at the Guantanamo Bay Naval Base in Cuba. With the exception of those accused of war crimes, the jurisdiction of the commission was limited to those persons deemed "unlawful enemy combatants."

> The term "unlawful enemy combatant" is defined under the MCA as:
>
> (i) a person who has engaged in hostilities or who has purposefully and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces); or
> (ii) a person who, before, on, or after the date of the enactment of the Military Commissions Act of 2006, has been determined to be an unlawful enemy combatant by a Combatant Status Review

> Tribunal or another competent tribunal established under the authority of the President or the Secretary of Defense.

10 U.S.C. §948a(1).

By contrast a "lawful enemy combatant" is defined as "a member of the regular forces of a State party engaged in hostilities against the United States." 10 U.S.C. §9489a(2)(A). Unquestionably General Noriega, who was a member of the Panamanian Defense Forces, would be considered a lawful enemy combatant pursuant to this statute.

The Military Commission Act amends 18 U.S.C. §2441 to add the following provisions:

> (e)(1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.
>
> (2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

Although the amendment to Section 2441 does not distinguish between the two classes of enemy combatants, it is clear that it was meant to apply only to "unlawful

combatants." As this Court will see from its review of the MCA, a prisoner's status as an unlawful combatant carries with it severe consequences, most notably the loss of the right to be tried by normal military court under the Military Justice Act. Consequently, the Act requires that a prisoner's status be determined by the Combatant Status Review Tribunal. 10 U.S.C. §948a. No such determination is required for a "lawful" combatant. Since Sections 2441(e)(1) and (2) refer specifically to persons the United States has determined to be enemy combatants, these provisions must be referring to "unlawful" enemy combatants.

This interpretation is supported by other provisions of the Act as well. For instance, Section 948b(a) describes the purpose of the legislation to be the establishment of "procedures governing the use of military commissions to try alien unlawful enemy combatants..." Section 948b(g) addresses the application of the Geneva Convention to unlawful enemy combatants. "No alien unlawful enemy combatant subject to trial by military commission under this chapter may invoke the Geneva Conventions as a source of rights." By contrast, this section places no limitation on the rights of lawful enemy combatants to invoke the protections of the Geneva Convention. Finally Section 948d(b) specifically excludes lawful enemy combatants from the jurisdiction of the military commissions except for violations of the law of war.

Section 5 of the MCA adds a note to 28 U.S.C. § 2241 that states:

> (a) IN GENERAL.–No person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus petition or other civil action or proceeding to which the United States, or a current or former officer, employee, member of the Armed Forces, or other agent of the United States is a party as a source of rights in any court of the United States or it States or territories.

This note conflicts with section 948b(g) which only denies unlawful enemy combatants the right to invoke the Geneva Convention. To the extent that this note has any interpretive force it should be given the narrowest construction under the doctrine of *ejusdem generis*. The language "any person" is so broad that it would apply to civilians as well as enemy combatants. It is hard to believe that in an Act creating military commissions, Congress would have intended to deprive civilians of their right to invoke the protection of Geneva IV, Convention Relative to the Protection of Civilian Persons in Time of War, August 12, 1949, 6 UST 3516.

Finally, In *Boumediene v. Bush*, ___F.3d___(CADC 2007), Case No. 05-5062 the Court of Appeals for the District of Columbia considered the effect of the MCA on habeas petitions filed by unlawful enemy combatants held at the Guantanamo Bay Naval Base in Cuba. The Petitioners argued that the MCA violated the Suspension Clause of the Constitution, U.S. Const. Art. I, §9, cl.2 which states that "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of

Rebellion or Invasion the public Safety may require it." Although the Court rejected this argument, it did so solely on the grounds that federal habeas corpus did not apply outside the territory of the United States. According to the court, "the Constitution does not confer rights on aliens without property or presence within the United States," Opinion, p. 18.[1]

In the instant case, General Noriega is clearly within the territory of the United States. To the extent that the amendment to 18 U.S.C. §2441 purports to strip General Noriega of his right to file a habeas petition to enforce applicable provisions of the Geneva Convention, *Boumediene v. Bush,* would hold that the amendment violates the Suspension Clause and is therefore unconstitutional. The MCA could only be constitutional if limited to unlawful combatants outside of the United States. To the extent that Article 5 discussed above has any constitutional authority to preclude a prisoner from invoking the Geneva Convention, it must also be limited to unlawful combatants who are outside the territory of the United States.

---

[1] As this Court may be aware, the Supreme Court initially declined to review the decision of the Court of Appeals. But in an order that is virtually unprecedented, the Court changed its position and granted certiorari review. Case nos. 06-1195, 06-1196; http://www.supremecourtus.gov/orders/07grantednotedlist.pdf

### C. ONLY IN THE CASE OF WAR CRIMES DOES THE GENEVA CONVENTION PERMIT THE TRANSFER OF A PRISONER OF WAR FROM ONE PARTY TO THE CONVENTION TO ANOTHER AFTER THE CESSATION OF HOSTILITIES

Article 118 requires that United States repatriate General Noriega to the Republic of Panama upon his release from the custody of the Bureau of Prisons on September 9, 2007:

> *Prisoners of war shall be released and repatriated without delay after the cessation of hostilities.*

The government invokes Article 129 in support of its contention that the Geneva Convention permits extraditions in an analogous situations. That Article states in relevant part:

> *Each High Contracting Party shall be under the obligation to search for persons alleged to have committed, or to have ordered to be committed, such grave breaches, and shall bring such persons, regardless of their nationality, before its own courts. It may also, if it prefers, and in accordance with the provisions of its own legislation, hand such persons over for trial to another High Contracting Party concerned, provided such High Contracting Party has made out a prima facie case.*

Grave breaches are, of course, war crimes, as conceded by the government in its Supplemental Reply, p. 5. What this Article demonstrates is that had the drafters' of the Geneva Convention wanted to permit transfers from one Power to another for

12

purposes of prosecution for ordinary offenses they knew how to do so. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n. 9 (2004).

### D. IT IS CRITICALLY IMPORTANT THAT THE GENEVA CONVENTION BE STRICTLY CONSTRUED IF OUR MEN AND WOMAN SERVING IN THE MILITARY ARE TO BE AFFORDED PROTECTIONS OF THE CONVENTION BY OTHER NATIONS

The United States expects even dictators to respect the protections afforded prisoners of war by the Geneva Convention. As Judge Robertson noted in *Hamdan v. Rumsfeld,* 344 F.Supp. 2d 152, 163 (D.D.C. 2004) after the capture of U.S. Warrant Officer Michael Durant in 1993 by forces loyal to a Somali warlord, the United States demanded assurances that Durant would be treated consistently with protections afforded by the Convention. And our nation's refusal to afford enemy combatants the protections of the Geneva Convention has already caused various regimes around the world to justify their own repressive policies. *Id.* citing Lawyers Committee for Human Rights, Assessing the New Normal: Liberty and Security for the Post-September 11 United States, at 77-80 (2003).

When Judge Hoeveler declared General Noriega a prisoner of war, the world was a far more peaceful place. We did not have soldiers in combat in Iraq, Afghanistan, and (covertly) Pakistan. North Korea did not have atomic weapons, nor did Pakistan. Our nation was not at war with al Qaeda. A lot has changed. But the

importance of the Geneva Convention has not. Indeed, it is even more important today than it was when Judge Hoeveler made the following remarks:

> [T]hose charged with that responsibility must keep in mind the importance to our own troops of faithful and, indeed, liberal adherence to the mandates of Geneva III. Regardless of how the government views the Defendant as a person, the implications of a failure to adhere to the Convention are too great to justify departures.
>
> In the turbulent course of international events-the violence, deceit, and tragedies which capture the news, the relatively obscure issues in this case may seem unimportant. They are not. The implications of a less-than-strict adherence to Geneva III are serious and must temper any consideration of the questions presented.

*United States v. Noriega*, 808 F.Supp. 791, 803 (S.D, Fla. 1992).

Fundamentally this Court has the power, the authority, and the moral obligation to see that the relevant articles of the Geneva Convention are strictly adhered to. This Court must therefore find that it is without the authority to order that General Noriega be extradited to France.

Respectfully submitted,

| | |
|---|---|
| Frank A. Rubino, Esq. | Jon May, Esq. |
| 2601 S. Bayshore Drive | 110 SE 6th Street |
| Suite 1400 | Suite 1970 |
| Miami, FL 33133 | Fort Lauderdale, FL 33301 |
| By: */s/ Frank A. Rubino* | By: */s/Jon May* |
|    FRANK A. RUBINO, ESQ. |    JON MAY, ESQ. |
|    Fla. Bar # 209171 |    Fla. Bar #276571 |

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing Notice has been filed electronically with the Clerk using CM/ECF and furnished by electronic delivery this 15 day of August, 2007 to: Michael P. Sullivan, Assistant U.S. Attorney and Sean Paul Cronin, Assistant United States Attorney, 99 NE 1st Street, Miami, FL and to all other counsel of record as listed by the clerk.

                                            By: */s/Jon May*
                                                  JON MAY, ESQ.